UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| THOMAS DIXON, <br> JIMMY FISHBURN, <br> and MARK ELLER, <br><br> Plaintiffs, <br><br> v. <br><br> PRODUCERS AGRICULTURE <br> INSURANCE COMPANY, <br><br> Defendant. | Case No. 2:14-cv-00034 <br><br> Consolidated with: <br> Case No. 2:14-cv-00035 <br> Case No. 2:14-cv-00036 <br><br> Judge Sharp |

## MEMORANDUM

Defendant Producers Agriculture Insurance Company ("Defendant" or "ProAg") filed a *Motion to Dismiss*[1] (Docket Entry No. 11; *Fishburn* Docket Entry No. 11; *Eller*, Docket Entry No. 11), to which Plaintiffs Thomas Dixon ("Dixon"), Jimmy Fishburn ("Fishburn") and Mark Eller ("Eller") (collectively, "Plaintiffs") filed a response (Docket Entry No. 24; *Fishburn* Docket Entry No. 24; *Eller*, Docket Entry No. 24).[2] On August 4, 2014, the Court heard oral argument and, for the reasons discussed herein, the Court will deny Defendant's motion.

---

[1] Plaintiffs Thomas Dixon, Jimmy Fishburn and Mark Eller filed three separate cases. On July 10, 2014, the Court entered an Order consolidating these matters into Case No. 3:14-cv-00034 "for all purposes." (Docket Entry No. 35). As a result, this memorandum and the accompanying order will address all three matters. The pending motions to dismiss were filed prior to the entry of the Order consolidating these matters. Unless noted otherwise, docket references are to *Dixon v. Producers Agriculture Insurance Company*, No. 2:14-cv-00034. The Court will clearly identify the references to docket entries in *Fishburn v. Producers Agriculture Insurance Company*, No. 2:14-cv-00035 and *Eller v. Producers Agriculture Insurance Company*, No. 2:14-cv-00036.

[2] On May 23, 2014, Defendant also filed a *Renewed Motion to Dismiss* Plaintiffs' Amended Complaints, to which Plaintiffs filed a response. (Docket Entry No. 26; *Fishburn* Docket Entry No. 26; *Eller*, Docket Entry No. 26). Both parties have incorporated Sections of their original arguments into their renewed filings. Thus, the Court will be referencing both documents in this opinion.

1

# FACTUAL BACKGROUND AND PROCEDURAL HISTORY

During the 2010 crop year, Plaintiffs were in the business of raising burley tobacco in Macon County, Tennessee.[3] Defendant is an insurance company and is an Approved Insurance Provider ("AIP"), meaning that Defendant issues Multiple Peril Crop Insurance Policies ("MPCI Policies") to farmers, which are reinsured by the Federal Crop Insurance Corporation ("FCIC"). Defendant has two agents, David Leath ("Leath") and Donald Law ("Law"), who maintain offices in Macon County, Tennessee, through whom Plaintiffs purchased their MPCI Policy for the 2010 crop year from Defendant.

Prior to the 2010 crop year, Plaintiffs and other farmers in Macon County, Tennessee became concerned about the eligibility of certain lands for coverage under the MPCI Policy. Specifically, they were concerned about a requirement that, for a burley tobacco crop to be eligible for coverage, an insurable crop must have been grown on the land in question one year within the last three years to qualify for coverage. Having no special expertise in crop insurance, Plaintiffs and the other farmers sought the advice of Defendant though its agents, Leath and Law.

In February 2010, representatives from ProAg were invited to a dinner put on by Law and Leath for the benefit of the local burley tobacco farmers. Representatives from ProAg were invited to speak on any new developments concerning insurance coverage, and any new requirements for eligibility. Defendant accepted this invitation and sent Tonya Peters ("Peters"), an underwriting supervisor for Defendant, to speak at the event. She discussed new changes, one of which was for a burley tobacco crop to be eligible for crop insurance there must have been an insurable crop grown on the property in question one year within the last three years. Peters also indicated that if a farmer did not meet this three year requirement, that a written agreement

---

[3] Unless otherwise noted, the allegations are drawn from Plaintiffs' Amended Complaints (Docket Entry No. 23; *Fishburn* Docket Entry No. 23; *Eller*, Docket Entry No. 23).

2

between the respective farmer and the Risk Management Association ("RMA") would have to be executed in order for the respective farmer's burley tobacco crop to be eligible for insurance coverage.

Dixon, Fishburn, Eller, Leath, Law, as well as other local farmers, attended this event and, at the end of the event, Leath and Law informed Peters that several of the burley tobacco farmers they represented would need to enter a written agreement with RMA and requested her assistance in accomplishing that. On April 20, 2010, Leath and Law visited Peters at her office in Lexington, Kentucky to discuss the preparation of the RMA written agreements. At that meeting, Peters represented to Leath and Law that she was "their savior" because if the respective farmers in question had raised a hay crop on the land in question one year within the last three years that it would qualify for burley tobacco insurance – the hay crop would be considered an insurable crop. These representations were passed onto Plaintiffs by both Leath and Law upon their return from Kentucky. Peters confirmed this information in an email to Leath on September 3, 2010.[4]

Plaintiffs, relying upon the information supplied by ProAg, each planted and raised a burley tobacco crop for the 2010 crop year. Further, Plaintiffs obtained coverage under their MPCI Policies from Defendant on the burley tobacco crops, for which they paid Defendant a substantial premium, all without seeking a written agreement with the RMA.

During the crop year of 2010, Plaintiffs each suffered a loss on their burley tobacco crops and filed a claim with Defendant. Initially, Defendant paid Plaintiffs' claims.[5] In June 2012, Defendant notified Plaintiffs that their burley tobacco crops for the year 2010 were not eligible

---

[4] Peters, in investigating this issue and passing on the information, was aware that the question was being posed to her by several farmers in Macon County, Tennessee through Leath and Law.

[5] Dixon submitted a claim in the amount of $8,694.00, while Fishburn's totaled $146,662.00 and Eller's claim totaled $73,649.00.

3

for coverage under the MPCI Policy. The correspondence stated that the land in question had not been in production, with an insurable crop on it one year within the last three previous years and demanded Plaintiffs return the amount previously paid on their claims, less the amount of the premium. These amounts have been repaid to Defendant in full.

Plaintiffs initiated this action in the Chancery Court of Macon County, Tennessee, on February 25, 2014 (Docket Entry No. 1, Ex. 1; *Fishburn* Docket Entry No. 1, Ex. 1; *Eller*, Docket Entry No. 1, Ex. 1). On or about March 28, 2014, Defendant filed a Notice of Removal causing the action to be removed to this Court based on diversity jurisdiction under 28 U.S.C. § 1332 (Docket Entry No. 1; *Fishburn* Docket Entry No. 1; *Eller*, Docket Entry No. 1).

## **ANALYSIS**

Plaintiffs brought this action against Defendant, alleging two state law claims, negligent misrepresentation and intentional misrepresentation. Defendant filed a Motion to Dismiss for failure to state a claim on each count. According to Defendant, Plaintiffs' claims are barred for the following reasons: (1) Plaintiffs failed to comply with a mandatory, time-limited claim appeal mechanism that the federal government requires in the federal crop insurance policy at issue as a prerequisite to the right to file suit, (2) Plaintiffs' claims for damages, punitive damages, and extra-contractual damages are barred by the terms of their federally reinsured insurance policy, and (3) Plaintiffs have not alleged facts with the particularity required by Rules 12(b) and 9(b) of the Federal Rules of Civil Procedure to support the causes of action they assert.

**I. Standard of Review**

The Federal Rules of Civil Procedure require Plaintiff to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed R. Civ. P. 8(a)(2). In deciding a motion to dismiss under Rule 12(b)(6), the court will "construe the complaint in the

light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The court must assume that all of the factual allegations are true, even if they are doubtful in fact. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In contrast, legal conclusions are not entitled to the assumption of truth. *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1950 (2009).

Generally, a complaint does not need to contain "detailed factual allegations," although its allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Blanket assertions" or a "formulaic recitation of the elements of a cause of action" are not sufficient. *Twombly*, 550 U.S. at 555, 556 n.3. In other words, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). The factual allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949-50. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.

Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "This rule requires a plaintiff: (1) to specify the allegedly fraudulent statements; (2) to identify the speaker; (3) to plead when and where the statements were made; and (4) to explain what made the statements fraudulent." *Republic Bank & Trust Co. v. Bear Stearns*, 683 F.3d 239, 247 (6th Cir. 2012). "Although 'conditions of a person's mind may be alleged generally,' Fed. R. Civ. P. 9(b), the plaintiff still must plead facts about the defendant's mental state, which, accepted as

true, make the state-of-mind allegation 'plausible on its face.'" *Id*. (quoting, *Iqbal*, 129 S.Ct. at 1949). (internal quotation marks omitted).

## II. Federal Crop Insurance

The crop insurance policies involved here were issued subject to the Federal Crop Insurance Act ("FCIA"), 7 U.S.C. § 1501 *et seq.* In 1938, Congress enacted the Federal Crop Insurance Act "to promote the national welfare by improving the economic stability of agriculture through a sound system of crop insurance and providing the means for the research and experience helpful in devising and establishing such insurance." *Alliance Ins. Co. v. Wilson*, 384 F.3d 547, 549 (8th Cir. 2004) (quoting 7 U.S.C. § 1502). Originally, the FCIA permitted only the Federal Crop Insurance Corporation to issue crop insurance policies and handle claims on those policies. *Id*. That changed in 1980, when Congress amended the FCIA and authorized the FCIC to allow private insurance companies to sell and service crop insurance policies to farmers. *Id*.; *see also Williams Farms of Homestead, Inc. v. Rain & Hail Ins. Servs., Inc.*, 121 F.3d 630, 633 (11th Cir. 1997). These policies are then fully reinsured by the FCIC so long as the insurance companies use the standard policy guidelines, including terms and conditions, established by the FCIC. *Williams Farms*, 121 F.3d at 633; *Nobles v. Rural Cmty. Ins. Servs.*, 122 F.Supp.2d 1290, 1292 (M.D.Ala. 2000).

## III. Application of Law

*A. Preemption*[6]

Defendant contends that Plaintiffs' claims are barred by the insurance policy's arbitration provision. (Docket Entry No. 18 at 11; *Fishburn* Docket Entry No. 18 at 11; *Eller*, Docket Entry

---

[6] This Section also discusses Defendant's statute of limitations argument as it relates to the MPCI Policy.

No. 18 at 11).[7] Defendant argues that the Complaint contains no allegations regarding proper initiation or completion of arbitration, nor any reference to an award. (*Id.*). Further, Defendant purports Plaintiffs' extracontractual claims and claims for punitive damages are "barred or specifically preempted" by federal law. (*Id*. at 13). Specifically, Defendant argues,

> Policyholders in the Federal Crop Insurance Program must appeal disagreements with insurance company determinations through mandatory arbitration that they must initiate within the federally-defined one-year limitations period. Plaintiff's MPCI policy contains terms in ¶20 that require a limited-scope arbitration proceeding to resolve any disagreements that he has concerning any policy or claim determinations that ProAg made regarding his coverage and/or claims for indemnity:
>
> (a) If you and we fail to agree on any determination made by us except those specified in section 20(d) or (e)49, … the disagreement must be resolved through arbitration in accordance with the rules of the American Arbitration Association (AAA), except as provided in sections 20(c) and (f), and unless rules are established by FCIC for this purpose. Any mediator or arbitrator with a familial, financial or other business relationship to you or us, or our agent or loss adjuster, is disqualified from hearing the dispute.
>
> (1) All disputes involving determinations made by us, except those specified in section 20(d) or (e), are subject to mediation or arbitration…In addition, MPCI Basic Provisions ¶20(b)(1) requires that an insured must initiate arbitration "*within one year of the date we denied your claim or rendered the determination with which you disagree, whichever is later.*"
>
> FCIC has provided binding guidance explaining that "the 'date we denied your claim' within the meaning of MPCI Basic Provisions ¶20(b) is the date the insurance provider notifies the insured producer of the amount of an indemnity payment or a determination that no indemnity payment is due, with or without interest." However, other determinations are also subject to arbitration, such as determinations regarding the existence of coverage, a policyholder's eligibility for insurance, or the amount of premium due.
>
> In addition to the mandatory arbitration requirement, the policy prohibits a policyholder from obtaining extracontractual and punitive damages, except in cases in which the policyholder first pursues and completes arbitration, and then

---

[7] As to Plaintiff Dixon, Defendant claims he has not even initiated arbitration, and the time period for him to do so expired before he filed suit against ProAg. With respect to Plaintiffs Fishburn and Eller, although Defendant acknowledges they have initiated arbitration, ProAg argues they both failed to complete arbitration before initiating this action.

obtains an administrative determination from the USDA RMA that the insurance company failed to follow procedure in its handling of the policy and claim. Only then can a policyholder sue for extracontractual damages.

(*Id.*)(emphasis in original).

Plaintiffs counter that any statute of limitations period is inapplicable to their claims under the MPCI Policy. (Docket Entry No. 25 at 6; *Fishburn* Docket Entry No. 25 at 61; *Eller*, Docket Entry No. 25 at 6). Moreover, their claims for intentional and negligent misrepresentation are not subject to the arbitration provision found in the policy. (*Id.* at 4-5). Rather, Plaintiffs "seek[] redress for Defendant's tortious actions and do[] not seek to dispute a determination made by Defendant." (*Id.*). Specifically, Plaintiffs continue, "[a]s set forth in the Complaint, [their] claims are based upon Defendant's assurance to Plaintiff[s] 'that land that had produced hay one year in the previous three years would in fact qualify for crop insurance on burley tobacco.' Such representation was not a 'determination.'" (*Id.*).

Both Plaintiffs and Defendant then direct the Court to a recent case from the Tennessee Court of Appeals, *Plants, Inc. v. Fireman's Fund Ins. Co.*, 2012 WL 3291805 (Tenn.Ct.App. August 13, 2012)[8], addressing whether ¶20 and regulatory damages limitations preempt claims made outside federal crop insurance policy terms.[9] The *Plants* court held at present, federal crop

---

[8] The Tennessee Court of Appeals released a companion case on the same day and with the same name as *Plants*. *See Plants, Inc. v. Fireman's Fund Ins. Co.*, 2012 WL 3326295 (Tenn.Ct.App. August 13, 2012).

[9] Defendant posits that although the *Plants* court was correct in ruling that the policy terms and regulations, specifically ¶ 20(i), preempt the contract claims, the *Plants* court failed to take into account the fact that the policy terms "explicitly foreclose any claims based on a theory of misrepresentation. Because the policy terms are federal law, policyholders are deemed to know them and cannot plead ignorance to their contents." (Docket Entry No. 18 at 19; *Fishburn* Docket Entry No. 18 at 19; *Eller*, Docket Entry No. 18 at 19). Additionally, Defendant argues that Plaintiffs have "contorted the allegations in their Complaint to disguise their claims for breach of contract, which would clearly be subject to arbitration, into claims for negligent and intentional misrepresentation." (*Id.* at 21).

Plaintiffs counter "the vast majority of courts who have considered the issue have held that a policyholder's state law tort, and often contract, causes of action are not preempted." *See e.g., Pelzer*, 928 F. Supp. 2d at 1076-77 (holding that claims for misrepresentation are not preempted); *Great Am. Ins.*

8

insurance regulations "reveal no conflict with state law claims for negligence, misrepresentation, or fraud." 2012 WL 3291805, at *10. As the Tennessee Court of Appeals explained in *Plants*, tort claims against private insurers are not preempted.

> The current form of the regulations [] reveal no conflict with state law claims for negligence, misrepresentation, or fraud. The language of the arbitration provision refers to disagreements over "determinations" made by the insurer presumably in accordance with the FCIA and FCIC regulations; however, misrepresentations regarding the policy or the applicability of a policy to a crop are distinguishable from a determination regarding the policy language and coverage under the policy. As *Skymont Farms v. North,* 862 F.Supp.2d 755 (E.D.Tenn. 2012) recognized, some state law claims appear to have been preempted and recoverable damages limited based upon the current language in 7 C.F.R. §§ 400.352 and 400.176. Specifically, it appears that the current language of the arbitration provision and these two regulations would bar a breach of contract action as that would be based upon a "determination" by the corporation and would fall within the prohibitions contained in the above regulations. However, claims for negligence or misrepresentation do not conflict with these provisions.
>
> "Preemption occurs when there is an outright or actual conflict between federal and state law." *BellSouth Telecommunications, Inc. v. Greer,* 972 S.W.2d 663, 670 (Tenn.Ct.App. 1997) (citing *Freightliner Corp. v. Myrick,* 514 U.S. 280, 287 (1995); *Louisiana Pub. Serv. Comm'n v. F.C.C.,* 476 U.S. at 368 (1986)). Preemption can also occur "by implication when compliance with both federal and state law is impossible or when state law obstructs the accomplishment of Congress's objectives." *Id.* (citing *Boggs v. Boggs,* 520 U.S. 833 (1997); *CSX Transp., Inc. v. Easterwood,* 507 U.S. 658, 663 (1993); *California Fed. Sav. & Loan Ass'n. Guerra,* 479 U.S. 272, 281 (1987)). It can also arise when Congress's legislation is "so pervasive that it leaves no room for state legislative action." *Id.* (citing *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516 (1992); *Louisiana Pub. Serv. Comm'n v. F.C.C.,* 476 U.S. at 368). Our courts should begin their inquiry with the presumption that Congress did not intend to preempt state law. *Id.* at 671. (citing *Building & Constr. Trades Council v. Associated Builders & Contractors of Massachusetts/Rhode Island, Inc.,* 507 U.S. at 224 (1993)). The proper approach is to reconcile the federal and state laws, rather than to seek out

---

*Co. v. Mills*, CIV.A.4:06-CV-01971R, 2008 WL 2250256 at *8 (D.S.C. May 29, 2008) (holding that the FCIA "only preempts actions against the government and not actions against private insurers based upon the actions of their agents." (citing *O'Neal v. CIGNA Property and Casualty Insurance Co.*, 878 F.Supp. 848 (D.S.C.1995))); *Farmers Crop Ins. Alliance v. Laux*, 442 F. Supp. 2d 488, 491 (S.D. Ohio 2006) ("[T]he RMA has not extinguished state law causes of action that may arise from tortious conduct by private companies selling RMA-approved reinsurance contracts." (citing *Nobles v. Rural Community Insurance Services*, 122 F.Supp.2d 1290, 1294 (M.D.Ala.2000))). (Docket Entry No. 25 at 8-9; *Fishburn* Docket Entry No. 25 at 8-9; *Eller*, Docket Entry No. 25 at 8-9).

conflict where none clearly exists. *Id.* (citing *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Ware,* 414 U.S. 117 (1973); *Exxon Corp. v. Governor of Maryland,* 437 U.S. at 130 (1978)). "State law should be displaced by federal law only to the extent there is a conflict." *Id.* (citing *Dalton v. Little Rock Family Planning Servs.,* 516 U.S. 474, 475–77 (1996)).

7 C.F.R. § 400.176 prohibits claims whose basis is the policy of insurance without a prior determination by the FCIC that there was a failure to comply with the terms of the policy and such failure resulted in the insured receiving a payment less than the amount the insured was entitled. However, state tort claims for negligence, misrepresentation, and fraud do not arise from the policy of insurance itself but from alleged tortious actions taken prior to the agreement being made or that occur outside the scope of the policy.

7 C.F.R. § 400.352 prohibits judgments or damages "arising out of actions or inactions ... authorized or required under the [FCIA], the regulations, any contract or agreement authorized by the [FCIA], or by regulations, or procedures issued by [the FCIC]." As the court in *Nobles* [*v. Rural Community Ins. Service*, 122 F.Supp.2d 1290 (M.D.Ala. 2000)] recognized, misrepresentations are not actions or inactions "required or authorized" under the FCIA, federal regulations, or the policy provisions.

Thus, as noted in *Skymont Farms,* "it does not follow from these specific exemptions that the entire rubric of state law claims and state court actions against the private insurance companies or insurance agents would be excluded." Keeping in mind that state law should only be displaced by federal law when there is a conflict, we find that Plants' state law claims for negligent misrepresentation and negligence are not preempted by federal law. Based upon the language in the federal regulations, however, we hold that the claims for breach of contract ... are preempted for they pertain to actions or inactions "required or authorized" under the FCIA, federal regulations, or the policy provisions.

*Plants*, 2012 WL 3291805, at *10-11.

After reviewing the applicable case law and the relevant statutes, the Court agrees with the *Plants* court and finds Plaintiffs' claims for negligent and intentional misrepresentation are not preempted under the FCIA, federal regulations, or the policy terms – and as such, are not barred by any statute of limitations under the MPCI policy nor are Plaintiffs prohibited from seeking extracontractual and punitive damages here.

*B. Misrepresentation Claims*

Next, Defendant argues that Plaintiffs' claims of negligent and intentional misrepresentation fail, even if they are not preempted, because Plaintiffs have not alleged facts sufficient to support these causes of actions – particularly the heightened fraud standard under Federal Rule of Civil Procedure 9(b). (Docket Entry No. 27 at 7-9; *Fishburn* Docket Entry No. 27 at 7-9; *Eller*, Docket Entry No. 27 at 7-9). Defendant further contends that the misrepresentation claims fail because these tort claims require justifiable reliance as an essential element, and as a matter of law, Plaintiffs cannot establish that element. (*Id*. at 20, 26).

Under Tennessee law, "[t]o succeed on a claim for negligent misrepresentation, a plaintiff must establish 'that the defendant supplied information to the plaintiff; the information was false; the defendant did not exercise reasonable care in obtaining or communicating the information and the plaintiff justifiably relied on the information.'" *Walker v. Sunrise Pontiac–GMC Truck, Inc.*, 249 S.W.3d 301, 311 (Tenn. 2008) (quoting *Williams v. Berube & Assocs.*, 26 S.W. 3d 640, 645 (Tenn.Ct.App. 2000)). "Tennessee has adopted Section 552 of the Restatement (Second) of Torts 'as the guiding principle in negligent misrepresentation actions against ... professionals and business persons.'" *Robinson v. Omer*, 952 S.W.2d 423, 427 (Tenn. 1997) (quoting *Bethlehem Steel Corp. v. Ernst & Whinney*, 822 S.W.2d 592, 595 (Tenn. 1991)). The Restatement (Second) provides as follows:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Restatement (Second) of Torts* § 552(1) (1977).

"The burden is not upon the defendant to show that it was not negligent, but rather, the burden is upon the plaintiff to show that its reliance upon any statements defendant may have made was reasonable." *McNeil v. Nofal*, 185 S.W. 3d 402, 408-409 (Tenn.Ct.App. 2006) (citing *Metropolitan Government of Nashville and Davidson County v. McKinney*, 852 S.W. 2d 233, (Tenn.Ct.App. 1992). "Justifiable reliance is a necessary element in a cause of action based upon negligent (or fraudulent) misrepresentation… until the justifiable reliance element is established, there is no negligent misrepresentation." *McNeil*, 185 S.W. 3d at 409 (citing *Lambdin v. Garland*, 723 S.W. 2d 953 (Tenn.Ct.App. 1986)).

To establish a claim of intentional misrepresentation, a plaintiff must demonstrate (1) a representation of an existing or past fact, (2) that the representation was false when it was made, (3) that it related to a material fact, (4) that it was made knowingly, recklessly, or without belief in its truth, (5) that the plaintiff reasonably relied on the misrepresentation, and (6) that the plaintiff suffered injury as a result of his or her reliance on the misrepresentation. *Walker*, 249 S.W.3d at 311; *see also Power & Tel. Supply Co.*, 447 F.3d at 931 (citing *Stacks v. Saunders*, 812 S.W.2d 587, 592 (Tenn. Ct. App. 1990)). Because a claim for intentional misrepresentation is "analyzed as a claim for fraud," it must be pleaded with particularity, which requires a plaintiff to allege "the time, place and content of the misrepresentations; the defendant's fraudulent intent; the fraudulent scheme; and the injury resulting from the fraud." *Power & Tel. Supply Co.*, 447 F.3d at 931.

Whether it be negligent or intentional, Plaintiffs must prove that he reasonably relied upon the misrepresentation to his detriment. *See McNeil*, 185 S.W. 3d at 408 (addressing reasonable reliance in the context of negligent misrepresentation); also s*ee Rural Developments, LLC v. Tucker*, 2009 WL 112541, *7 (Tenn.Ct.App. 2009) (citing *Hill v. John Banks Buick*, 875

S.W.2d 667 (Tenn.Ct.App.1993) (addressing reasonable reliance in the context of intentional misrepresentation). Accepting as true the Plaintiffs' accounts of the alleged misrepresentations, the Court must determine whether Plaintiffs' reliance upon Defendant was reasonable. In this regard, several factors must be considered, including "(1) the plaintiff's business expertise and sophistication; (2) the existence of a longstanding business or personal relationship between the parties; (3) the availability of the relevant information; (4) the existence of a fiduciary relationship; (5) the concealment of fraud; (6) the opportunity to discover fraud; (7) which party initiated the transaction; and (8) the specificity of the misrepresentation." *See Goodall v. Akers*, 2009 WL 528784, \*6 (Tenn.Ct.App. Jan. 8, 2009); *Pitz v. Woodruff*, M2003-01849-COA-R3-CV, 2004 WL 2951979, \*19 (Tenn.Ct.App. Dec. 17, 2004); *see also Allied Sound, Inc. v. Neely*, 58 S.W. 3d 119, 122 (Tenn.Ct.App. 2001).

Construing the allegations of the Complaint in the light most favorable to Plaintiffs, the Court finds they have sufficiently established the required elements for their intentional misrepresentation claim and they were justified in relying on Defendant's representations. Plaintiffs alleged that Defendant made a representation that land, which had produced hay one year in the previous three years, would qualify for crop insurance on burley tobacco. Plaintiff further alleged that Defendant made the statement knowing it was false or, alternatively, with reckless disregard of its falsity. And moreover, Plaintiffs alleged that by planting their tobacco crop in 2010 and obtaining coverage from Defendant on that crop without procuring a written agreement from the RMA – they relied on Defendant's information. Lastly, Plaintiffs have alleged they suffered significant monetary loss as a result of these actions. Based on the well-pleaded allegations, Plaintiffs have stated a claim for intentional misrepresentation and complied with the heightened pleading standard of Federal Rule of Civil Procedure 9(b).

Likewise, the Court concludes that the Complaint states a claim for negligent misrepresentation. In this regard, Plaintiffs allege Peters supplied false information to them through Leath and Law, failed to exercise reasonable care in doing so, and they justifiably relied on the information by planting burley tobacco in the 2010 crop year and obtaining coverage from Defendant on that crop without obtaining a written agreement from the RMA. For the same reason set forth in the intentional misrepresentation analysis, the Court finds Plaintiffs have sufficiently pleaded a claim of negligent misrepresentation.

Consequently, the Court finds Defendants' motion should be denied.

## **CONCLUSION**

Having considered the matter in accordance with the applicable federal rules, the Court finds that the allegations in the Complaint to withstand the essential elements of negligent and intentional misrepresentation. As such, Defendant's *Motion to Dismiss* and *Renewed Motion to Dismiss* (Docket Entry Nos. 11 and 26; *Fishburn* Docket Entry Nos. 11 and 26; *Eller*, Docket Entry Nos. 11 and 26) will be denied.

An appropriate Order will be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE