UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| THOMAS DIXON, JIMMY FISHBURN, and MARK ELLER, | Case No. 2:14-cv-00034 |
| Plaintiffs, | Consolidated with: Case No. 2:14-cv-00035 Case No. 2:14-cv-00036 |
| v. | Judge Sharp |
| PRODUCERS AGRICULTURE INSURANCE COMPANY, | |
| Defendant. | |

## MEMORANDUM

Pending before the Court is Defendant's *Motion for Summary Judgment* (Docket Entry No. 64). The motion has been fully briefed by the parties.[1]

## RELEVANT FACTS AND PROCEDURAL HISTORY

During the 2010 crop year, Plaintiffs were in the business of raising burley tobacco in Macon County, Tennessee.[2] Defendant is an insurance company and is an Approved Insurance Provider ("AIP"), meaning that Defendant issues Multiple Peril Crop Insurance Policies ("MPCI Policies") to farmers, which are reinsured by the Federal Crop Insurance Corporation ("FCIC"). Defendant has two agents, David Leath ("Leath") and Donald Law ("Law"), who maintain offices in Macon County, Tennessee, through whom Plaintiffs purchased their MPCI Policy for the 2010 crop year from Defendant.

---

[1] Defendant also filed a motion for reconsideration. *See* (Docket Entry No. 59). That motion, which asks for similar relief, will be denied for the same reasons the Court will address in this opinion.

[2] Unless otherwise noted, the facts are drawn from the parties' statements of material facts and related declarations and exhibits. Based upon the record, the specific facts set forth in this Court's summary appear to be a fair characterization of the facts relevant to the issues presented in the filings.

1

Prior to the 2010 crop year, Plaintiffs and other farmers in Macon County, Tennessee became concerned about the eligibility of certain lands for coverage under the MPCI Policy. Specifically, they were concerned about a requirement that, for a burley tobacco crop to be eligible for coverage, an insurable crop must have been grown on the land in question one year within the last three years to qualify for coverage.[3] Having no special expertise in crop insurance, Plaintiffs and the other farmers sought the advice of Defendant through its agents, Leath and Law.

In February 2010, representatives from ProAg were invited to a dinner put on by Law and Leath for the benefit of the local burley tobacco farmers. Representatives from ProAg were invited to speak on any new developments concerning insurance coverage, and any new requirements for eligibility. Defendant accepted this invitation and sent Tonya Peters ("Peters"), an underwriting supervisor for Defendant, to speak at the event. She discussed new changes, one of which was for a burley tobacco crop to be eligible for crop insurance there must have been an insurable crop grown on the property in question one year within the last three years. Peters also indicated that if a farmer did not meet this three year requirement, that a written agreement between the respective farmer and the Risk Management Association ("RMA") would have to be executed in order for the respective farmer's burley tobacco crop to be eligible for insurance coverage.

Dixon, Fishburn, Eller, Leath, Law, as well as other local farmers, attended this event and, at the end of the event, Leath and Law informed Peters that several of the burley tobacco farmers they represented would need to enter a written agreement with RMA and requested her assistance in accomplishing that. On April 20, 2010, Leath and Law visited Peters at her office

---

[3] MPCI Basic Provisions ¶9(a)(1) states that acreage that has not been planted and harvested or insured in at least one of the three previous crop years is not eligible for insurance.

in Lexington, Kentucky to discuss the preparation of the RMA written agreements. At that meeting, Peters represented to Leath and Law that she was "their savior" because if the respective farmers in question had raised a hay crop on the land in question one year within the last three years that it would qualify for burley tobacco insurance – the hay crop would be considered an insurable crop. These representations were passed onto Plaintiffs by both Leath and Law upon their return from Kentucky. Peters confirmed this information in an email to Leath on September 3, 2010.[4]

Plaintiffs, relying upon the information supplied by ProAg, each planted and raised a burley tobacco crop for the 2010 crop year. Further, Plaintiffs obtained coverage under their MPCI Policies from Defendant on the burley tobacco crops, for which they paid Defendant a substantial premium, all without seeking a written agreement with the RMA.

During the crop year of 2010, Plaintiffs each suffered a loss on their burley tobacco crops and filed a claim with Defendant. Initially, Defendant paid Plaintiffs' claims.[5] In June 2012, Defendant notified Plaintiffs that their burley tobacco crops for the year 2010 were not eligible for coverage under the MPCI Policy. The correspondence stated that the land in question had not been in production, with an insurable crop on it one year within the last three previous years and demanded Plaintiffs return the amount previously paid on their claims, less the amount of the premium. These amounts have been repaid to Defendant in full.

## ANALYSIS

Plaintiffs brought this action against Defendant, alleging two state law claims, negligent misrepresentation and intentional misrepresentation. According to Defendant, Plaintiffs' claims

---

[4] Peters, in investigating this issue and passing on the information, was aware that the question was being posed to her by several farmers in Macon County, Tennessee through Leath and Law.

[5] Dixon submitted a claim in the amount of $8,694.00, while Fishburn's totaled $146,662.00 and Eller's claim totaled $73,649.00.

are barred for the following reasons: (1) Plaintiffs' claims for extra-contractual damages are prohibited by the terms of their federally reinsured insurance policies and crop insurance-related rules and regulations, (2) each of the Consolidated Plaintiffs failed to comply with a mandatory, time-limited claim appeal mechanism (arbitration) that the federal government requires in the federal crop insurance policies at issue as a prerequisite to the right to file suit, and (3) to the extent that Plaintiffs relied upon the representations alleged in their Amended Complaints, such reliance was not reasonable, or justified. (Docket Entry No. 65 at 1-2).

**I. Standard of Review**

A party may obtain summary judgment if the evidence establishes there are not any genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Covington v. Knox County School Sys.*, 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. *See Martin v. Kelley*, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Covington*, 205 F.3d at 914 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if appropriate. Fed. R. Civ. P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. A genuine issue

4

exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The standard remains the same when both parties move for summary judgment. *Taft Broad. Co. v. United States,* 929 F.2d 240, 248 (6th Cir. 1991). "When reviewing cross-motions for summary judgment, the court must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Wiley v. United States (In re Wiley),* 20 F.3d 222, 224 (6th Cir. 1994).

**II. Application of Law**

*A. Misrepresentation Claims*

Plaintiffs have brought claims against Defendant for negligent and intentional misrepresentation. Defendant first insists that Plaintiffs are deemed to have constructive knowledge of the policy provisions, arguing "[i]t is a longstanding principle that policyholders in federal insurance programs, such as the Federal Crop Insurance Program, are deemed to know the policy terms and cannot 'plead ignorance to the technical provisions' in the policy's requirements."[6] (Docket Entry No. 65 at 16). Defendant next argues that Plaintiffs' misrepresentation claims fail because their alleged reliance of the representations was unreasonable as a matter of law. (*Id*. at 17).

First, Plaintiffs counter, they are not suing on the policy or denial of coverage, or the process utilized in reviewing and making the decision – "[t]hey are not pleading ignorance."

---

[6] *Oaks v. Allstate Ins. Co, citing Federal Crop Ins. Corp. v. Merrill,* 68 S.Ct. 1 (1947).

(Docket Entry No. 88 at 7). Further, Plaintiffs argue that "[t]his argument is another back door attempt at asserting preemption. Defendant is once again stating Plaintiffs are held to specific terms of the policy. Once again this is not a suit on the policy." (*Id*.). As to Defendant's argument on reliance, Plaintiffs contend that under Tennessee law reasonable reliance is a question of fact in either intentional or negligent misrepresentation.[7] (*Id*. at 11).

In Tennessee, there is not a separate cause of action for intentional misrepresentation. *Fairway Village Condo. Assoc., Inc. v. Conn. Mutual Life Ins. Co.,* 934 S.W.2d 342, 347 (Tenn.Ct.App. 1996). Rather, intentional misrepresentation is an element of fraud. *Id.* However, "the two are often used interchangeably in common parlance." *Id.; see also Parks v. Fin. Fed. Sav. Bank,* 345 F.Supp.2d 889, 895 (W.D. Tenn. 2004) (noting that "under Tennessee law, there is not a separate cause of action for intentional misrepresentation" and that "intentional misrepresentation is an element of a cause of action for fraud rather than an independent cause of action"); *Concrete Spaces, Inc. v. Sender,* 2 S.W.3d 901, 904 n. 1 (Tenn. 1999) (stating that the terms "intentional misrepresentation," "fraudulent misrepresentation," and "fraud" are synonymous).

In order to establish a claim for fraudulent or intentional misrepresentation, a plaintiff must show the following: (1) the defendant made a representation of an existing or past fact; (2) the representation was false when made; (3) the representation was in regard to a material fact; (4) the false representation was made either knowingly or without belief in its truth or recklessly; (5) plaintiff reasonably relied on the misrepresented fact; and (6) plaintiff suffered damage as a result of the misrepresentation. *Walker v. Sunrise Pontiac–GMC Truck, Inc.,* 249 S.W.3d 301, 311 (Tenn. 2008). The party alleging fraud bears the burden of proving each element. *Hiller v.*

---

[7] *See Security. Fed. S&L v. Riviera, Ltd.*, 856 S.W.2d 709 (Tenn.App. 1992) and *Pakrul v. Barnes*, 631 S.W.2d 436 (Tenn.App. 1981).

*Hailey,* 915 S.W.2d 800, 803 (Tenn.Ct.App. 1995) (quoting *Williams v. Spinks,* 7 Tenn.App. 488 (1928)). In *Robinson v. Omer,* 952 S.W.2d 423 (Tenn. 1997), the Tennessee Supreme Court discussed the essential elements of a negligent misrepresentation claim:

> (1) the defendant is acting in the course of his business, profession, or employment, or in a transaction in which he has a pecuniary (as opposed to gratuitous) interest; and
>
> (2) the defendant supplies faulty information meant to guide others in their business transactions; and
>
> (3) the defendant fails to exercise reasonable care in obtaining or communicating the information; and
>
> (4) the plaintiff justifiably relies upon the information.[8]

Consequently, the difference between fraudulent (i.e., intentional) and negligent misrepresentation is that, in addition to the four *prima facie* requirements for negligent misrepresentation, fraudulent misrepresentation requires a fifth element, which is that "the false representation [must be made] either knowingly or without belief in its truth or recklessly [with regard to its truth]." *Metropolitan Gov't v. McKinney,* 852 S.W.2d 233, 237 (Tenn.Ct.App. 1992); *see also* Restatement (Second) of Torts § 525 (1977). "[A] person acts fraudulently when (1) the person intentionally misrepresents an existing, material fact or produces a false impression, in order to mislead another or to obtain an undue advantage, and (2) another is injured because of reasonable reliance upon that representation." *Hodges v. S.C. Toof & Co.,* 833 S.W.2d 896, 901 (Tenn. 1992).

---

[8] In determining whether a plaintiff's reliance is reasonable, several factors must be considered, including "the plaintiff's business expertise and sophistication," "the availability of the relevant information" and "the opportunity to discover the fraud." *Allied Sound, Inc. v. Neely,* 58 S.W.3d 119, 123 (Tenn.Ct.App.2001) (quoting *City State Bank v. Dean Witter Reynolds, Inc.,* 948 S.W.2d 729, 737 (Tenn.Ct.App.1996)).

Here, Plaintiffs have offered sufficient evidence for a reasonable jury to conclude that Peters, as agent for Defendant through Leath and Law, knowingly misrepresented to the farmers that they could plant their tobacco crop and obtain coverage from Defendant on that crop without procuring a written agreement from the RMA; that Plaintiffs relied on Peters' representations; and that Plaintiffs suffered harm because of their reliance. There are genuine issues as to material facts, and a reasonable jury could conclude that Defendant is liable for the misrepresentation claims. Defendant has not demonstrated it is entitled to judgment as a matter of law on Plaintiffs' negligent and intentional misrepresentation claims. Therefore, their motion for summary judgment on these claims is denied.

*B. Federal Crop Insurance Contract and Preemption[9]*

Defendant argues that Plaintiffs' extracontractual claims and claims for punitive damages are specifically preempted by Federal Law. (Docket Entry No. 65 at 6).

The crop insurance policies at issue in this case were dispensed subject to the Federal Crop Insurance Act ("FCIA"), 7 U.S.C. § 1501 *et seq.* In 1938, Congress enacted the Federal

---

[9] This issue, which is also the center of Defendant's motion for reconsideration, was addressed in the Court previous Memorandum Opinion. The Court ruled as follows:

> Both Plaintiffs and Defendant then direct the Court to a recent case from the Tennessee Court of Appeals, *Plants, Inc. v. Fireman's Fund Ins. Co.*, 2012 WL 3291805 (Tenn.Ct.App. August 13, 2012)8, addressing whether ¶20 and regulatory damages limitations preempt claims made outside federal crop insurance policy terms. The *Plants* court held at present, federal crop insurance regulations "reveal no conflict with state law claims for negligence, misrepresentation, or fraud." 2012 WL 3291805, at *10. As the Tennessee Court of Appeals explained in *Plants*, tort claims against private insurers are not preempted.
>
> ∗∗∗
>
> After reviewing the applicable case law and the relevant statutes, the Court agrees with the *Plants* court and finds Plaintiffs' claims for negligent and intentional misrepresentation are not preempted under the FCIA, federal regulations, or the policy terms – and as such, are not barred by any statute of limitations under the MPCI policy nor are Plaintiffs prohibited from seeking extracontractual and punitive damages here.

(Docket Entry No. 38, Memorandum Opinion, 8-10).

Crop Insurance Act "to promote the national welfare by improving the economic stability of agriculture through a sound system of crop insurance and providing the means for the research and experience helpful in devising and establishing such insurance." *Alliance Ins. Co. v. Wilson*, 384 F.3d 547, 549 (8th Cir. 2004) (quoting 7 U.S.C. § 1502). Originally, the FCIA permitted only the Federal Crop Insurance Corporation to issue crop insurance policies and handle claims on those policies. *Id*. That changed in 1980, when Congress amended the FCIA and authorized the FCIC to allow private insurance companies to sell and service crop insurance policies to farmers. *Id.*; *see also Williams Farms of Homestead, Inc. v. Rain & Hail Ins. Servs., Inc.*, 121 F.3d 630, 633 (11th Cir. 1997). These policies are then fully reinsured by the FCIC so long as the insurance companies use the standard policy guidelines, including terms and conditions, established by the FCIC. *Williams Farms*, 121 F.3d at 633; *Nobles v. Rural Cmty. Ins. Servs.*, 122 F.Supp.2d 1290, 1292 (M.D.Ala. 2000).

> In making its preemption argument, Defendant explains,
>
> FCIC issues its official and binding interpretations of crop insurance provisions and regulations as Final Agency Determinations (FADs). In response to Congress' mandate at 7 U.S.C. §1506(r) that the FCIC provide procedures for the issuance of the agency's binding interpretations of crop insurance regulations, FCIC established a process at 7 C.F.R. Part 400, Subpart X that enables the agency to publish FADs electronically on the RMA website. See 7 CFR §400.768(f). A FAD is binding upon all participants in the Federal Crop Insurance Program. See 7 CFR §400.765(c).
>
> ***
>
> The federal regulation that defines the MPCI Basic Provisions of Plaintiffs' policies (see 7 CFR §457.8) requires at ¶20(b)(4) that the parties must obtain policy or procedure interpretations from the Federal Crop Insurance Corporation, and also makes those interpretations binding upon the Court:
>
> (4) In any suit, if the dispute in any way involves a policy or procedure interpretation, regarding whether a specific policy provision or procedure is applicable to the situation, how it is applicable, or the meaning of any policy provision or procedure, an interpretation must be obtained from FCIC in

9

accordance with 7 CFR part 400, subpart X or such other procedures as established by FCIC. Such interpretation will be binding.

7 CFR §457.8 ¶20(b)(4) (2010 ed.). These interpretations are binding under the authority of 7 CFR §400.765(c) and 7 USC §1506(r). In addition to that regulatory authority, Plaintiffs agreed to be bound by such interpretations by entering into the insurance contract, which includes MPCI Basic Provisions ¶20(b)(4) as a term of coverage.

\*\*\*

These newly available FADs demonstrate that 7 CFR §400.176 and 7 CFR §400.352 do not permit a policyholder to seek damages for misrepresentation without first obtaining FCIC permission. FCIC purposefully excluded all claims for damages that it has not approved as gatekeeper, including any claims for misrepresentation.

\*\*\*

RMA has now published its interpretations of 7 CFR §400.176, the equivalent language in 20(i) of the Basic Provisions, and 7 CFR §400.352 which indicate that in this case the Plants court's analyses and presumption regarding preemption are not correct.[10]

---

[10] Subsequent to this Court's decision on the motions to dismiss, Defendant sought regulatory interpretations on 7 CFR §400.176 and §400.352. The USDA Risk Management Agency published two Final Agency Determinations on behalf of Federal Crop Insurance Corporation. The determinations read, in relevant part, as follows:

Federal Agency Determination FAD-240 (§400.176(b))

Any claim, including a claim for extra-contractual damages solely arising from a condition related to policies of insurance pursuant to the Federal Crop Insurance Act (Act), may only be awarded if a determination was obtained from FCIC in accordance with section 20(i) of the Basic Provisions and §400.176(b).

FCIC also agrees that 7 CFR § 400.176, and the equivalent language in section 20(i) of the Basic Provisions preempts any state law claims that are in conflict…

To the extent that State courts have awarded extra-contractual damages without first obtaining a determination from FCIC, such awards are not in accordance with the law.
Final Agency Determination FAD-251 (§400.352)

… any claim, including a claim for extra-contractual damages, that arises under or is related to a Federal crop insurance policy issued pursuant to the Federal Crop Insurance Act (Act) may only be awarded if a determination is obtained from FCIC in accordance with section 20(i) of the Common Crop Insurance Policy Basic Provisions and §400.352.

(Docket Entry No. 65 at 7-9).

Plaintiffs counter that "Defendant continues to engage in an extensive effort to lure this Honorable Court into its false premise that this State tort action has something to do with the MPCI policy. It does not." (Docket Entry No. 88 at 5). Plaintiffs argue,

> The Plaintiffs have never taken issue with the final decision of the RMA (Risk Management Agency), FCIC (Federal Crop Insurance Corporation), or Pro-Ag that the acreage in question was not insurable. The issue is simply the negligent and/or intentional misrepresentation made about the insurability of the acres in question. Plaintiffs have not challenged any decision made or ruling by any Federal Agency or body. There is no basis for any suit against Pro-Ag, RMA, or the FCIC for any actions taken in its review and final determination that the acres in question were not insurable. This is a tort claim plain and simple. It does not sound in contract at all.
>
> As stated several times in previous documents and before this Honorable Court in oral argument, there is no remedy available for the alleged wrongdoing that occurred in this matter under the MPCI and any supporting rules or regulations. Section 20 (h) of the MPCI [Defendant's Ex # 3] states: "no award or settlement in mediation, arbitration, appeal, administrative review or reconsideration process or judicial review can exceed the amount of liability established on which should have been established under the policy (emphasis added), except for interest awarded in accordance with section 26."
>
> This section exposes the red-herring argument dealing in part with the alleged arbitration requirement. Any damages awarded are limited to those that would have been due under the policy. The damages sought in this matter have nothing to do with the policy. The Plaintiffs are not taking issue or claiming they are owed one penny under the policy. The plain language of the policy coupled with the Defendant's interpretation of Final Agency Decisions (FAD) 240 (Ex# 4) and 251 (Ex#5) that this cause of action would be subject to arbitration is a false premise. This is a process in which they could never receive any damages even if all facts as alleged in the Amended Complaint were proven. The Defendants are asking this Honorable Court to accept the interpretation that there would be no remedy at all. The Defendant's counsel admitted that there is no remedy under arbitration

---

As previously provided in FAD-240, FCIC also agrees that 7 C.F.R. § 400.352 pre-empts any State law that would allow a claim for extra-contractual damages that conflicts with the provision in section 400.352… To the extent State courts award extra-contractual damages without first obtaining a determination from FCIC, such awards are not in accordance with 7 C.F.R. § 400.352 and FCIC regulations.

*See* (Docket Entry Nos. 62-1 and 62-2).

> for the Plaintiffs in this matter in open Court during Oral Argument. Section 20(h) of the MPCI made reference to 20(i). (Ex# 3) This subsection allows the awarding of attorney fees, costs, and punitive damages from the Defendants only if a determination is obtained that the Defendant's agent or loss adjuster failed to comply with the terms of this policy or procedures issued by the FCIC. This failure must also result in the Plaintiff receiving a payment less than what was entitled. Again the Plaintiffs made no claim of violation of any terms of the policy or any FCIC procedure. This section, as all of the MPCI terms and supporting policies, are inapplicable.

(*Id*. at 5-8).

In order to avoid preemption, Plaintiffs must show damages that are unrelated the insurance policy because federal law preempts state-law claims regarding issues that involve a policy or procedure interpretation. *See*, *e.g., Parks,* 345 F.Supp.2d at 895. "While Tennessee courts may apply the benefit-of-the-bargain rule to actions for negligent misrepresentation, they are 'not required' to do so 'mechanically in every misrepresentation case'. *Zander v. Katz, Sapper & Miller, LLP*, 25 F.Supp.3d 1055 (M.D. Tenn. 2014) (citing *Rose v. City of Covington,* 634 S.W.2d 268, 269 (Tenn.1982), *Muesing v. Ferdowsi,* 1991 WL 20403, at *7 (Tenn.Ct.App. Feb. 21, 1991)). Here, if Plaintiffs are seeking damages that give them the benefit of their bargain, namely, the difference between the actual value of the property received and the value the property they would have possessed had the misrepresentation been true, their state-law claims are preempted under federal law and subject to dismissal.

In order to survive dismissal, succeed on their state law claims and avoid preemption, Plaintiffs must have suffered a pecuniary loss. *See, Parks,* 345 F.Supp.2d at 895 (citing *Ritter v. Custom Chemicides, Inc.*, 912 S.W.2d 128, 130 (Tenn. 1995); Rest.2d Torts, § 522)). The Restatement (Second) provides as follows:

> (1) the damages recoverable for a negligent misrepresentation are those necessary to compensate the plaintiff for the pecuniary loss to him of which the misrepresentation is a legal cause, including:

(a) the difference between the value of what he has received in the transaction and its purchase price or other value given for it; and

(b) pecuniary loss suffered otherwise as a consequence of the plaintiff's reliance upon the misrepresentation.

(2) the damages recoverable for a negligent misrepresentation do not include the benefit of the plaintiff's contract with the defendant.

Restatement (Second) of Torts § 552B (1977).

Plaintiffs maintain "[t]he damages sought in this matter have nothing to do with the policy. The Plaintiffs are not taking issue or claiming they are owed one penny under the policy." (Docket Entry No. 88 at 6). The Court finds that to the extent Plaintiffs are claiming they suffered a pecuniary loss – and their alleged damages are rooted in ProAg representative Tonya Peters alleged false information, through Defendant's agents David Leath and Donald Law, that Plaintiffs' land was insurable and they need not obtain written agreement from the RMA, such claims are not preempted under the FCIA, federal regulations, or the policy terms. Consequently, dismissal is denied as to preemption.[11]

## CONCLUSION

For all of the reasons stated, the Court will deny Defendant's *Motion for Summary Judgment* (Docket Entry No. 64). The Court will also deny Defendant's *Motion for Reconsideration* (Docket Entry No. 59).

An appropriate Order shall be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE

---

[11] Defendant also asserts that Plaintiffs' punitive damages should be denied. Defendant's argument is also premised upon its contention that all state claims are preempted by federal law, and thus properly dismissed. As discussed *supra*, Plaintiffs' misrepresentation claims are not preempted under the FCIA, federal regulations, or the policy terms. Therefore, this argument fails.

13